1

2

3

4            UNITED STATES DISTRICT COURT

5                 DISTRICT OF NEVADA

6                        * * *

7    JUSTIN D. IRISH-MILLER,                    Case No. 2:14-CV-1654 JCM (NJK)

8                          Plaintiff(s),                    ORDER

9         v.

10   LAS VEGAS METROPOLITAN POLICE
     DEPARTMENT, et al.,
11
                          Defendant(s).
12

13

14           Presently before the court is defendants Las Vegas Metropolitan Police Department

15   ("LVMPD") and Officers Ryan Fryman, C. Hartfield, D. Denton, D. Viskoc, and R. Wright's (the

16   "officers") amended motion for summary judgment.  (ECF No. 55).

17           Plaintiff Justin Irish-Miller has filed a response (ECF No. 56), and defendants have filed a

18   reply (ECF Nos. 57, 58).

19       I.      Introduction

20               a.  The encounter

21           This case arises out of the September 19, 2012, police action at which time plaintiff gave

22   a suspect of a drug-related crime a ride in his vehicle and was subsequently detained by police.[1]

23   *See* (ECF No. 56).

24           Plaintiff states that while he was waiting for his overheated car to cool down a van of

25   undercover police officers seized both the suspect and plaintiff.  (*Id.*).  Specifically, plaintiff avers

26   that he "was pushed into his car, had his shoulder grabbed, chin slammed into the hood, and

27
     _____
28          [1]  For the purposes of this motion, plaintiff's testimony must generally be treated as the
     true account of the events at issue.  *See Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th
     Cir. 2017).

James C. Mahan
U.S. District Judge

1    handcuffed." (*Id.* at 3) (citing (ECF No. 56-1)).  Plaintiff submits that he was then cursed at by an

2    officer and put "in a chokehold." (*Id.* at 4) (citing (ECF No. 56-1)).

3           Plaintiff further alleges that the officers then threw him "head first into the floor of the

4    van," hitting his face on the floor and that he eventually lost consciousness after an officer put his

5    knee on his neck. (*Id.* at 4) (citing (ECF No. 56-1)).  Mr. Irish-Miller regained consciousness after

6    having been transported to a different location and noticed his teeth felt broken. (*Id.*) (citing (ECF

7    No. 56-1)).  He asserts that the officers then read him his *Miranda* rights after an interrogation at

8    the new location. (*Id.*) (citing (ECF No. 56-1)).

9                              *b.   Plaintiff's claims*

10          In his amended complaint, plaintiff alleges the following claims: (1) violation of the Fourth

11   and Fourteenth Amendments against all defendants; (2) municipal liability in relation to the first

12   claim, against all defendants; (3) negligent supervision and training against LVMPD; (4)

13   negligence and gross negligence against all defendants; (5) violation of the Eight and Fourteenth

14   Amendments against the officers; (6) negligence against the officer defendants; (7) assault and

15   battery against the officers; (8) battery against all defendants; (9) intentional infliction of emotional

16   distress ("IIED") against all defendants; (10) negligent infliction of emotional distress against all

17   defendants; (11) negligence *per se* against all defendants; and (12) a request for punitive damages.[2]

18   (ECF No. 21).

19                             *c.   Submitted arguments*

20          Regarding the constitutional allegations, defendants relevantly assert qualified immunity

21   and argue that there is no evidence that an LVMPD policymaker's decision resulted in a violation

22   of plaintiff's constitutional rights. (*Id.*).

23          Against the state-law allegations, the officers first claim discretionary immunity. (*Id.*).

24   Next, the officers contest that they are not liable under IIED because their conduct was neither

25   extreme and outrageous nor willful, in light of the totality of the circumstances. (*Id.*).  Third,

26   defendants acknowledge that assault and battery requires unlawful touching, but they contend that

27

28          [2]  Claims 1, 2, and 5 are brought under 42 U.S.C. § 1982.  *See* (ECF No. 21).  Further, to
     the extent that some claims may appear somewhat redundant, they are considered together for the
     purposes of this motion.

**James C. Mahan**
**U.S. District Judge**

the contact at issue was lawful.  (*Id.*).  Fourth, defendants contend that there can be no liability based upon negligence or negligent training because plaintiff has failed to establish a breached duty.  (*Id.*).  Finally, defendants state that punitive damages are inappropriate because there is no "evil motive or intent, or . . . a reckless or callous indifference to Plaintiff's constitutional rights." (*Id.* at 27).

Plaintiff responds that there are relevant material disputes of facts as to various challenged claims.  *See* (ECF No. 56).  Next, plaintiff asserts that he was subjected to more than a *Terry* stop and Officer Fryman cannot product articulable facts supporting his decision to detain plaintiff. (*Id.*).  Third, he argues that the officers used unreasonable force.  (*Id.*).  Fourth, plaintiff pleads alternative forms of liability.  (*Id.*).  Fifth, plaintiff asserts that the elements are met as to his claims and, finally, that federal law permits punitive damages in this case.  (*Id.*).

## II.      Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."  *Id.*

In determining summary judgment, the court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *Id.*

James C. Mahan
U.S. District Judge

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III.    Discussion**

   *a.   Constitutional claims*

      *1.   Qualified immunity*

When a plaintiff brings a claim under 42 U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity.  *See Spoklie v. Montana,* 411 F.3d 1051, 1060 (9th Cir. 2005).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly

and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Indeed, "[q]ualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

The doctrine protects government officials performing discretionary functions from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244.  Qualified immunity may apply even if the defendant makes a mistake of law or acts based upon a mistake of fact.  *Id.* at 231.

Deciding whether an officer is entitled to qualified immunity is a two-step inquiry.  *Id.* at 232.  First, the court assesses whether the plaintiff has alleged or shown a violation of a constitutional right.  *Id.*  Second, the court decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Id.*  The Supreme Court has instructed that district judges may use their discretion when deciding which qualified immunity prong to address first, based upon the circumstances of the case at issue.  *See id.* at 236.

The second prong of the qualified immunity test requires a court to determine whether the right plaintiff claims was violated was "clearly established."  *See id.*  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

Further, "clearly established law" may "not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742

1    (2011)).[3]  Indeed, "[w]ithout that 'fair notice,' an officer is entitled to qualified immunity."  *City*

2    *& Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777 (2015).

3            To be clear, "[w]here the defendant raises the affirmative defense of qualified immunity,

4    the initial burden is upon the plaintiff to show that the rights were clearly established, after which

5    the defendant bears the burden of proving that his conduct was reasonable."  *Shoshone-Bannock*

6    *Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1285 (9th Cir. 1994) (citing *Romero v.*

7    *Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991)).

8            Here, defendants have asserted qualified immunity; therefore, plaintiff must first

9    demonstrate that his rights were "clearly established" within the "particularized" factual context

10   of the encounter.  *See White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

11   (1987)); *Shoshone-Bannock Tribes*, 42 F.3d at 1285.

12           Upon review of plaintiff's response, this court concludes that plaintiff has failed to

13   surmount his burden; he has not applied case law to the factual circumstances of this specific

14   action.[4]  *See* (ECF No. 56).  Indeed, plaintiff alludes to a contrary understanding of the qualified

15   immunity standard.  *See* (*id.*) (citing non-binding authority).

16           Therefore, the officers are entitled to qualified immunity as to claims one, two, and five.[5]

17   *See* (ECF No. 21).

18                                    2.  Monell *liability*

19           The principal framework governing municipal liability in § 1983 actions was established

20   in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Under *Monell*, municipal liability must be

21   based upon the enforcement of a municipal policy or custom, not upon the mere employment of a

22   constitutional tortfeasor.  *Id.* at 691.  Therefore, in order for liability to attach, four conditions must

---

23

24       [3]  The Court, in *al-Kidd*, explicitly noted that it "ha[d] repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." 563 U.S. 731, 742 (2011) (citation omitted).

25

26       [4]  Specificity in the qualified immunity context is important because "general statements of the law are not inherently incapable of giving fair and clear warning to officers."  *White*, 137 S.

27   Ct. at 552 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)) (internal quotation mark omitted).

28       [5]  Although claim two is brought under a theory of municipal liability, it is asserted against all defendants.  *See* (ECF No. 21).

**James C. Mahan**
**U.S. District Judge**

- 6 -

be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

"To prevent municipal liability . . . from collapsing into respondeat superior liability," federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that the municipality is not held liable solely for the actions of its employees." *Board of Cnty. Comm. of Bryan City v. Brown*, 520 U.S. 397, 405, 410 (1997). Thus, a municipality will only be liable when the "execution of a government's policy or custom . . . inflicts the injury . . . ." *Monell*, 463 U.S. at 694.

"Proof of random acts or isolated events" does not fit within *Monell*'s meaning of custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds*, *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). Indeed, "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970))).

It is well settled in the Ninth Circuit that a plaintiff generally cannot establish a *de facto* policy with a single constitutional violation. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Instead, a plaintiff's theory must be founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d 1135 (9th Cir. 2000). Defendants argue that evidence of this element is lacking and therefore have carried their initial burden under summary judgment. *See Celotex Corp.*, 477 U.S. at 323–24; *see also* (ECF No. 55).

In response, plaintiff argues as follows:

> Defendants' Motion states that Plaintiff and the arrested individual, Mr. Kainan Anderson were taken to a "pre-determined location." It stands to follow that the conduct involved here was a planned operation and it was always the plan to immediately remove any suspect from the location. Therefore it is Plaintiff's contention that the Defendant officers were acting pursuant to a policy enacted by LVMPD and/or an agent on behalf of LVMPD.

James C. Mahan
U.S. District Judge

- 7 -

1   (ECF No. 56 at 16) (citations omitted).

2          However, plaintiff has also submitted that "[d]iscovery in this matter is closed. The parties

3   are preparing for trial pending the resolution of the instant matters." (*Id.* at 5). Plaintiff would

4   have the court believe that, although discovery has concluded, it should join him in making a

5   leap—without "non-speculative evidence of specific facts"—that a material dispute of fact is

6   present here because a relevant policy exists somewhere that warrants the denial of summary

7   judgment. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir.

8   2011). The court declines to do so, and the instant motion will be granted as to claim two.

9                              *b.  State claims*

10                          *1.  Discretionary immunity*

11         Nevada has waived its general state immunity under Nevada Revised Statute ("NRS") §

12   41.031. The state's waiver of immunity is not absolute; the state has retained a "discretionary

13   function" form of immunity for officials exercising policy-related or discretionary acts. *See* Nev.

14   Rev. Stat. § 41.032.[6]

15         In 2007, the Nevada Supreme Court adopted the United States Supreme Court's *Berkovitz-*

16   *Gaubert* two-part test regarding discretionary immunity. *See Martinez v. Maruszczak*, 168 P.3d

17   720, 722, 728–29 (Nev. 2007). Under Nevada law, state actors are entitled to discretionary-

18   function immunity under NRS § 41.032 if their decision "(1) involve[s] an element of individual

19   judgment or choice and (2) [is] based on considerations of social, economic, or political policy."

20   *Id.* at 729. "[F]ederal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts,

21   keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing

22   of legislative and administrative decisions grounded in social, economic, and political policy

23   through the medium of an action in tort." *See id.* at 729 (quoting *United States v. S.A. Empresa de*

24   *Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)) (internal quotation marks

25   omitted).

26   _____

27          [6]  NRS 41.032 states in relevant part that no action may be brought against a state officer
    or official which is "[b]ased upon the exercise or performance or the failure to exercise or perform
28   a discretionary function or duty on the part of the State or any of its agencies or political
    subdivisions . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2).

James C. Mahan
U.S. District Judge

Immunity attaches under the second criterion "if the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped." *Martinez*, 168 P.3d at 729.  The trial court does not determine a police officer's "subjective intent in exercising the discretion conferred by statute or regulation, but [rather focuses] on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 728 (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).  Therefore, to satisfy the second criterion, the court need not consider whether the defendants "made a conscious decision regarding policy considerations . . . ." *Id.*

As it pertains to plaintiff's allegations, "[d]ecisions regarding the amount of force to use are not the kind of policy decisions the discretionary-function exception was designed to shield." *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F. Supp. 3d 999, 1013 (D. Nev. 2014), *rev'd on other grounds*, No. 14-16939, 2016 WL 6648698 (9th Cir. Nov. 10, 2016).  Therefore, discretionary immunity does not apply in this case.

### 2.  *Negligent supervision and training*

As to claim three, defendants state that "plaintiff has not . . . shown that Defendants breached any duty of care owed him in using force against plaintiff or in the training and supervision of the Officers involved in the incident."  (ECF No. 55 at 25).

In its amended complaint, plaintiff alleges that the duty at issue here is LVMPD's duty to train and supervise its officers.  (ECF No. 21).  Defendants assert that plaintiff has produced no evidence supporting this claim.  (ECF No. 55).  In response, plaintiff indicates previous allegations against Fryman and expert testimony stating that seizure did not meet minimal police standards.  (ECF No. 56).

The vague accusations of prior-alleged ill behavior presented here are insufficient to create a dispute of material fact.  Plaintiff specifically cites the fact that Fryman had been put on administrative leave after a deadly force incident, yet conveniently omits that Fryman testified that he has discharged his firearm only in training and never while on duty.  *See* (ECF No. 56, 56-4).  Moreover, plaintiff cites a brief excerpt of expert testimony but does not describe what facts

James C. Mahan
U.S. District Judge

- 9 -

1    underlying that testimony conflict with defendants' argument that plaintiff has no evidence of any

2    breached duty.  (ECF No. 56).  Therefore, summary judgment on count three will be granted in

3    favor of LVMPD.

4                                  *3.  Negligence and negligence* per se *claims*

5         The amended complaint alleges that defendants were negligent and also committed gross

6    negligence by "subject[ing] the public to an unreasonable risk of injury in the use of force to

7    apprehend suspects."  (ECF No. 21 at 7).  Specifically, plaintiff submits *inter alia* that he lost

8    consciousness as a result of the force used against him.  *See* (ECF Nos. 56, 56-1).

9         In their motion, defendants maintain the same argument here as the previous claim: that

10   plaintiff has identified no duty that they have violated.  (ECF No. 55).  But plaintiff has offered an

11   allegedly violated duty and has testified, for example, that his face was "slammed . . . against the

12   floor of the bed of the truck," and that an officer "sat on" his neck.  (ECF Nos. 21, 56-1 at 146–

13   47).  Therefore, defendants have failed to meet their initial burden on summary judgment as to the

14   negligence claims.  *See Adickes*, 398 U.S. at 159–60.

15                                       *4.  Assault and battery*

16        Under Nevada law, a police officer is privileged to use the amount of force reasonably

17   necessary.  *See Vasquez-Brenes*, 51 F. Supp. 3d at 1014; *see also Clark v. Campbell*, no. 3:14-cv-

18   00333-LRH-WGC, 2015 WL 7428554, at *5 (D. Nev. Nov. 20, 2015).       However, an officer

19   who uses more force than is reasonably necessary is liable for battery.  *See Yada v. Simpson*, 913

20   P.2d 1261, 1262 (Nev. 1996); *see also Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev.

21   1996) (applying Nevada law).

22        Defendants challenge these claims, arguing that there was no unlawful touching of plaintiff

23   in light of the events surrounding the seizure.  *See* (ECF No. 55).  Plaintiff, however, reasserts his

24   argument that there is a material dispute of fact that bears on the reasonability of the force used by

25   the officers when seizing plaintiff.   *See* (ECF No. 56).  As discussed above, plaintiff has

26   specifically testified as to defendants' alleged application of force that illustrates a dispute

27   regarding whether the officers' actions were reasonable.  *See Espinosa v. City & Cnty. of San*

28   *Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) ("Those unresolved issues of fact are also material

**James C. Mahan**
**U.S. District Judge**

1   to a proper determination of the reasonableness of the officers' belief in the legality of their

2   actions."); *see also* (ECF No. 56-1).

3          Moreover, defendants have not elucidated why a citation to a criminal statute's definition

4   of assault is pertinent for a tort claim.  *See* (ECF No. 55); *see also* Nev. Rev. Stat. § 200.471.

5          Thus, the instant motion will not be granted as to these claims.

6                         *5.  Intentional infliction of emotional distress*

7          To state a claim for intentional infliction of emotional distress, a plaintiff must
           show: (1) defendant acted in an extreme and outrageous manner, (2) defendant
8          intended to or recklessly disregarded the probability that his conduct would cause
           plaintiff emotional distress, (3) plaintiff actually suffered extreme or severe
9          emotional distress, and (4) defendant's conduct caused plaintiff's distress.

10  *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1201 (D. Nev. 2009); *see also Miller v. Jones*,

11  970 P.2d 571, 577 (Nev. 1998).[7]

12         Here, defendants aver that they are not liable for intentional infliction of emotional distress

13  because "[t]here is no evidence of outrageous conduct or that Defendants acted with disregard to

14  a high probability that their actions would cause severe emotional distress" and that the conduct

15  was not willful.  (ECF No. 55 at 24).  Therefore, defendants have met their initial summary

16  judgment burden as to this claim.  *See Celotex Corp.*, 477 U.S. at 323–24.

17         Although plaintiff's response discusses defendant's alleged physical conduct, he neither

18  discusses defendants' intent nor, even briefly, considers whether recklessness was afoot.  *See* (ECF

19  No. 56).  Accordingly, the second element of IIED is not supported upon challenge; therefore,

20  summary judgment will be granted as to this claim.  *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

21                              *6.  Punitive damages*

22         Defendants contest that plaintiff is not entitled to punitive damages because plaintiff has

23  not shown by clear and convincing evidence that the officers' actions were fraudulent, oppressive,

24  or malicious.[8]  *See* (ECF No. 55) (citing Nev. Rev. Stat. § 42.005); *see also Midwest Supply, Inc.*

25  *v. Waters*, 510 P.2d 876, 878 n.1 (Nev. 1973).

26  _____

27         [7] Plaintiff has withdrawn his claim for negligent infliction of emotional distress.  *See* (ECF
    No. 44).

28         [8]  Plaintiff notes that he has "already withdrawn his punitive damage claims against the
    municipality as it relates to the state law claims."  (ECF No. 56 at 2).

**James C. Mahan**
**U.S. District Judge**

The burden now shifts to plaintiff to show that there is a genuine dispute of material fact as to this claim. *See Celotex Corp.*, 477 U.S. at 323–24.  Plaintiff responds either with a discussion of § 1983 claims, which is no longer relevant to the analysis, or by generally offering conclusory statements regarding defendants' actions without any engagement with the facts of this case. *See* (ECF No. 56).  Thus, plaintiff has failed to respond to defendants' argument here, and summary judgment will be granted in favor of the defendants as to this issue. *See Cafasso, U.S. ex rel.*, 637 F.3d at 1061; *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

## IV.    Conclusion

In sum, each claim's fate is as follows: (1) counts one, two, and five—the constitutional claims—are defeated; (2) summary judgment will be granted in favor of LVMPD on count three; (3) claims four, six, and eleven survive the present challenge; (4) claims seven and eight similarly outlast defendants' motion; (5) summary judgment will be granted in favor of defendants as to claim nine; (6) plaintiff's claim of negligent infliction of emotional distress (claim ten) was abandoned in a prior filing; and (7) defendants succeed in challenging the final "claim" of punitive damages.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' amended motion for summary judgment (ECF No. 55) be, and the same hereby is, GRANTED as to claims one, two, three, five, nine, ten, and twelve.

IT IS FURTHER ORDERED that defendants' amended motion for summary judgment (ECF No. 55) be, and the same hereby is, DENIED as to claims four, six, seven, eight, and eleven.

DATED March 24, 2017.

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 12 -